J-S83029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: J.D., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: M.S. | |
| | No. 975 WDA 2016 |

Appeal from the Order June 3, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000021-2016

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 16, 2016**

M.S. ("Mother") appeals from the order dated June 3, 2016,[1] and entered on June 7, 2016, that granted the petition of the Allegheny County Office of Children, Youth and Families ("OCYF") for involuntary termination of her parental rights to her son, J.D. ("Child"), born in May of 2011, pursuant to the Adoption Act, 23 Pa.C.S. §§ 2101–2938.  We affirm.

The orphans' court accurately and aptly set forth the factual background and procedural history of this case in its opinion entered on

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  "The Parental Rights of J.D., natural Father (hereinafter, "Father"), were also terminated pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), [(a)](2), (a)(5), and (a)(8).  Father did not appear at either of the hearings and did not appeal this [c]ourt's decision."  Orphans' Court Opinion, 8/25/16, at 1 n.2.

August 15, 2016, which we incorporate herein. Orphans' Court Opinion, 8/25/16, at 2-6. On February 8, 2016, OCYF filed a petition to terminate Mother's parental rights. Following hearings on May 27, 2016, and June 3, 2016, the orphans' court granted OCYF's petition, involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(2), (a)(5), (a)(8), and 2511(b). Order, 6/7/16. On July 5, 2016, Mother filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court complied with Pa.R.A.P. 1925(a).

On appeal, Mother raises one issue:

Did the trial court abuse its discretion and/or err as a matter of law in concluding that [OCYF] met its burden of proving that termination of Birth Mother's parental rights serves the needs and welfare of [Child] pursuant to 23 Pa. C.S. § 2511(b) by clear and convincing evidence when such is not supported by the record[?]

Mother's Brief at 5 (reformatted).

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; [***In re***] ***R.I.S.***, 36 A.3d [567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result

- 2 -

merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, [613 Pa. 371,] 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***

As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826–827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

Mother solely challenges the orphans' court's conclusion that termination of her parental rights serves the needs and welfare of Child pursuant to section 2511(b).[2] That section provides as follows:

**§ 2511. Grounds for involuntary termination**

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Mother asserts that the evidence was insufficient to support the termination of her parental rights under 23 Pa.C.S. § 2511(b). Specifically, Mother argues that OCYF failed to prove: (a) that termination of her parental rights would best serve Child's needs and welfare; and (b) that no bond exists between Child and Mother to the extent that Child would suffer irreparable harm if Mother's rights were terminated. Mother's Brief at 11,

_____

[2] Mother has waived any challenge to the sufficiency of the evidence to support termination under 23 Pa.C.S § 2511(a) by her failure to include such a challenge in both her concise statement of errors complained of on appeal and the Statement of Questions Involved in her brief on appeal. **See Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both her concise statement of errors complained of on appeal and the statement of questions involved in her brief on appeal).

In support of her position, Mother relies on *In re Adoption of G.L.L.*, 124 A.3d 344, 347 (Pa. Super. 2015). Therein, Mother posits, this Court recognized that "[a]n existing parent-child relationship may preclude termination where the relationship is positive and provides meaningful contributions to the child's life and well-being." Mother's Brief at 15. Applying *G.L.L.*, Mother argues that her relationship with Child "should be preserved" because "a strong parent-child bond can be inferred from the observations made by Dr. Patricia Pepe, the testimony of the [O]CYF caseworker and from the testimony of Mother." *Id.* Those observations include an attachment between Child and Mother, the benefit of ongoing contact between them, and their interaction when together. *Id.* at 16–18.

OCYF presents different observations: Child is bossy and controlling towards Mother, who gives into him easily; Mother is more attached to Child than he is to her; if Mother's rights were terminated, Child would be upset, but not irreparably harmed. OCYF's Brief at 8, 12, 15. The *guardian ad litem* ("GAL") argues that the parent-child relationship between Mother and Child is "not one comprised of love, comfort, security and closeness." GAL's Brief at 11 (citing *In re Bowman*, 647 A.2d 217 (Pa. Super. 1994)). Rather, when Child was with Mother, Child "was acting as the parent." *Id.* at 13.

The focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child under section 2511(b). *In re Adoption of*

- 5 -

*C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has explained this perspective as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Additionally, it is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely."

*In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting")).

The trial court submitted the following analysis under section 2511(b):

> Here, this [c]ourt judiciously evaluated the bond between Mother and Child and determined that there was no indication that an emotional bond exists to the extent that the termination of parental rights of Mother would cause Child to suffer extreme emotional consequences. In reaching this conclusion, this [c]ourt relied upon the testimony of Patricia Pepe, Ph.D. (hereinafter, "Dr. Pepe"), a licensed psychologist, and agreed that termination meets the Child's needs and welfare. Dr. Pepe described the significance of positive and primary attachment as "the capacity for the child to understand that a parent or parent figure is able

- 6 -

to care for them and address their needs so they feel a sense of stability and safety. There is a sense that the child can depend upon these parents to be there for him. That is, the child is the child and the parents is [sic] the parent." [N.T.] 5/27/16 at 64.

Dr. Pepe conducted evaluations in December of 2015 and April of 20[16]. [N.T.] 5/27/16 at 60. Dr. Pepe described Child's interactional evaluation with the Foster Parents:

> He was very responsive to the Foster Parents, and they exhibited excellent parenting skills… they consistently exhibited positive and appropriate parenting skills, and Child was a very happy child in both of the evaluations.
> … .
>
> What struck me about the Foster Parents is they have a very good understanding of what Child's dynamics are.
> … .
>
> I think they have a very good understanding of what the Child's mental issues are. They set boundaries.

[N.T.] 5/27/16 at 62–63.

Notably, Dr. Pepe observed that Child "demonstrated multiple bonding behaviors" with the Foster Parents and "it seemed like a very positive placement, and each of the Foster Parents demonstrated positive and primary attachment." [N.T.] 5/27/16 at 64.

Dr. Pepe also conducted two evaluations of Mother. Dr. Pepe commended Mother for having shown increased stability, but expressed concern because:

> The issue with bipolar disorders and especially with psychotic features and episodes of mania is health issues are not reliable, and they are very transient in that any time there could be an episode of mania or depression.
>
> Historically, individuals with bipolar disorders have the most difficulty maintaining medication

compliance. She is doing it now, and I give her credit for that, but it wasn't so long ago that she wasn't.

So, also, there could be an emergence of any symptoms to such severity that she may need hospitalization at some time.

So she has a history of opiate dependence, bipolar disorder, moderately low intellectual and active behavioral functioning, and unfortunately, she has been resistant to some services that would help her with her intellectual instability and help achieve that.

[N.T.] 5/27/16 at 67.

During the interactional evaluation between Mother and Child, Dr. Pepe noted "that Child seems to really look out for his mother and is concerned. He tells her to be careful. He will, you know, to some degree parentify with his mother." [N.T.] 5/27/16 at 68. Also, Dr. Pepe doubts Mother's capacity to grasp how to appropriately parent Child since Mother did not participate in developmentally appropriate behaviors and "she didn't seem to understand developmentally what he knows and doesn't know, what he needs and doesn't need." [N.T.] 5/27/16 at 69. For example, Mother has a one bedroom apartment and informed Dr. Pepe that she and Child could share the bedroom. Dr. Pepe indicated that doing so "is not learning appropriate boundaries. It inhibits the relationship between the parent and the child, as both parents and child need their own space." [N.T.] 5/27/16 at 71.

The uncontroverted testimony established that Child's needs are best met with the Foster Parents. A strong bond exists between the Foster Parents and Child because Child has been living with the Foster Parents for about fifteen out of the past twenty-two months and relies on them to be his primary caregivers.

Given Mother's significant history of opiate dependence, her diagnosis of bipolar disorder, her moderately low intellectual and active behavioral functioning, this Court found it unsettling that Mother is resistant to services that would help her with her

stability. More specifically, this Court is concerned that Mother declined to attend a higher level of care at Mercy Behavioral Health despite recommendations from her therapist and Court Orders. [N.T.] 5/27/16 at 24; *see also* OCYF Exhibit 1, December 2, 2015, Court Order. Mother testified that she attends NA and AA meetings only "once in a while" despite having relapsed on heroin in April of 2015. [N.T.] 6/3/16 at 54. Ms. Weaver explained that OCYF sought termination of Mother's parental rights because:

> Mother failed to make progress on family service plan goals, and time and care… the Child has been in care for well over 15 out of 22 months. He is in a stable, pre-adoptive foster home that is willing to meet the Child's best needs and include the biological family to play a part in the Child's life. He has made significant progress since he has been in his foster home… Mother, though she has been in contact and has been consistent, has not made adequate progress at this time.

[N.T.] 5/27/16 at 55.

Most notably, Dr. Pepe explained that Child and Mother do not exhibit the same level of attachment as Child and the Foster parents and explicitly testified that she does not believe that Child will be irreparably harmed if Mother's parental rights are terminated. [N.T.] 5/27/16 at 76.[3]

The evidence established that Child's primary bond is with the Foster Parents. The Foster Parents provide Child with much needed stability and permanence at his young age. This [c]ourt concludes that the developmental, physical and emotional needs and welfare of Child would be best served by terminating Mother's parental rights.

---

[3] Dr. Pepe observed, "While [Child] certainly recognizes his mother and was happy to see her, it is frankly difficult to assess whether it is related to genuine attachment and bonding, although I am sure that there is some attachment that [Child] feels towards his mother, or if it is his ability to get gifts and his favorite food items." OCYF Exhibit 3 at 8.

Orphans' Court Opinion, 8/25/16, at 7–10.

After a careful review of the record in this matter, we conclude that it supports the trial court's factual findings and that the trial court's legal conclusions are not the result of an abuse of discretion or an error of law. N.T., 5/27/16, at 18–56, 59–84. ***In re Adoption of S.P.***, 47 A.3d at 826–827. Accordingly, the trial court properly found that OCYF presented sufficient evidence to demonstrate that the developmental, physical and emotional needs and welfare of Child would be best served by terminating Mother's parental rights. 23 Pa.C.S. § 2511(b). We, therefore, affirm the order terminating Mother's parental rights to Child.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/16/2016</u>